**Diane S. HAGE, Jon Hage, Virjean Coryell, Carol Thompson, and Myrtice Hinkle, on behalf of themselves and others similarly situated, Plaintiffs,**

v.

**GENERAL SERVICE BUREAU, Defendant.**

**No. 8:01CV367.**

United States District Court,
D. Nebraska.

Dec. 29, 2003.

886

Cary L. Flitter, Lundy, Flitter Law Firm, Narberth, PA, Pamela A. Car, Car Law Firm, Omaha, NE, for Plaintiffs.

Karen A. Haase, Robert L. Bals, Harding, Shultz Law Firm, Lincoln, NE, for Defendant.

## MEMORANDUM AND ORDER

BATAILLON, District Judge.

This matter is before the court on the parties' cross-motions for partial summary judgment, Filing Nos. 129 and 131. This is a class action suit[1] alleging violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et seq., and the Nebraska Consumer Protection Act (NCPA), Neb. Rev Stat. § 59–1602 and Neb.Rev. Stat. §§ 25–1708 and 25–1801. Named plaintiffs are five Omaha consumers against whom the defendant collection agency (GSB) took action in Douglas County District Court to collect on unpaid debts.

Plaintiffs move for a summary judgment of liability on both their FDCPA and NCPA claims. Defendant moves for summary judgment in its favor on plaintiffs' NCPA claims. The undisputed evidence shows that GSB recovered attorney fees, costs, and prejudgment interest in connection with its collection of debts of members of the plaintiff class. Plaintiffs agreed to pay the total of the underlying debt, plus interest, attorney fees and costs in exchange for securing dismissal of county court litigation without the entry of judgment against them. After receiving payment, GSB moved for dismissal of the county court actions without prejudice. Only those cases in which the agreement creating the debt but not authorizing collection of such amounts are at issue in these motions. See Plaintiffs' Index, Filing No. 136, Ex. 1 ("Stipulation re Calculation of Suit Charges").

## DISCUSSION

On a motion for summary judgment, the question before the court is whether the record, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Mansker v. TMG Life Ins. Co., 54 F.3d 1322, 1326 (8th Cir.1995). Where unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate. Id. The burden of establishing the nonexistence of any genuine issue of material fact is on the moving party. Fed.R.Civ.P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

### FDCPA

Plaintiffs contend that the undisputed evidence shows they are entitled to judgment on their FDCPA claim. GSB contends, on the other hand, that genuine issues of fact preclude summary judgment on this claim. In passing the FDCPA, "Congress found 'abundant evidence of the

1. See Filing No. 37.

use of abusive, deceptive, and unfair debt collection practices.'" *Johnson v. Riddle,* 305 F.3d 1107, 1116–17 (quoting S. Rep. 95–382, at 2 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1696) ("The committee has found that debt collection abuse by third party debt collectors is a widespread and serious national problem."). The express purpose of passing the FDCPA was "to eliminate abusive debt collection prac- tices by debt collectors, to insure that those debt collectors who refrain from us- ing abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). Because the FDCPA is a remedial statute, it should be con- strued liberally in favor of the consumer. *Johnson,* 305 F.3d at 1117.

The substantive heart of the FDCPA lies in three broad prohibitions: 1) a "debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt"; 2) a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt;" and 3) a "debt collector may not use unfair or unconscionable means to col- lect or attempt to collect any debt." 15 U.S.C. §§ 1692d, 1692e, 1692f. Violation of the FDCPA subjects debt collectors to civil liability or administrative enforcement by the Federal Trade Commission. 15 U.S.C. §§ 1692k, 1692l. A successful plaintiff may recover actual damages, stat- utory damages up to $1,000, attorney fees, and costs. *Peters v. General Service Bu- reau,* 277 F.3d 1051, 1054 (8th Cir.2002) (noting that in evaluating whether a debt collection letter is false, misleading, or de- ceptive in violation of section 1692e, the letter must be viewed through the eyes of an unsophisticated consumer).

Only the third substantive prohi- bition-use of unfair or unconscionable means to collect a debt—is implicated in this case. "Use of unfair or unconsciona- ble means" under the FDCPA can be es- tablished with a showing that a debt collec- tor's act in collecting a debt "causes injury to the consumer that is (1) substantial, (2) not outweighed by countervailing benefits to consumers or competition, and (3) not reasonably avoidable by the consumer." *Id.* Under section 1692f, prohibited "un- fair" actions include, but are not limited to, debt collection practices set out in several listed examples. Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed.Reg. 50,097, 50,107, *available at* 1988 WL 269068 (F.R.) (Fed. Trade Comm'n 1988). One listed example of an unfair or unconscionable action under that provision is "[t]he collection of any amount (includ- ing interest, fee, charge, or expense inci- dental to the principal obligation)" unless "authorized by the agreement or permitted by law." 15 U.S.C. § 1692f(1); *Johnson,* 305 F.3d at 1117; Staff Commentary, 53 Fed.Reg. at 50, 107–08 ("[f]or purposes of [section 1692f], 'amount' includes not only the debt, but also any incidental charges, such as collection charges, interest, service charges, late fees, and bad check handling charges."). In other words, under section 1692f(1), an additional amount may be col- lected if state law *expressly* permits it, even if the contract is silent on the matter; but, if state law neither affirmatively per- mits nor expressly prohibits collection of an additional amount, the amount can be collected only if the customer expressly agrees to it in the contract. *Tuttle v. Equifax Check,* 190 F.3d 9, 13 (2d Cir. 1999) (regarding service charges).

The dispositive question is thus whether the additional sums collected by GSB in the county court actions were "per- mitted by law." *See, e.g., Miller v. Wolpoff*

& Abramson, 321 F.3d 292, 307–308 (2d Cir.2003). The court looks to Nebraska law rather than to federal law to make this determination. *See, e.g., Freyermuth v. Credit Bureau Serv.*, 248 F.3d 767, 770 (8th Cir.2001). This determination is an issue of statutory interpretation and is thus a matter of law for resolution by the court. *See Johnson*, 305 F.3d at 1117–18.

An amount is "permitted by law" within the meaning of the FDCPA if state supreme court holdings establish that collection of the amount is lawful. *Johnson*, 305 F.3d at 1119 (10th Cir.2002). The court begins with the general proposition that Nebraska follows the "American Rule" that attorney fees may be recovered only when authorized by statute or when a recognized and accepted uniform course of procedure allows recovery of an attorney fee. *Sid Dillon Chevrolet–Oldsmobile–Pontiac, Inc. v. Sullivan*, 251 Neb. 722, 559 N.W.2d 740, 748 (1997). GSB sought fees pursuant to the statutory grant contained in Neb.Rev.Stat. § 25–1801. That statute provides for recovery of attorney fees, costs, and interest in actions to recover amounts less than $2,000 for charges or services for the "necessaries of life," if the claimant "establishes the claim and secures judgment thereon." Neb.Rev.Stat. § 25–1801. Nebraska law does not authorize collection of interest or attorney fees absent a judgment. *Ehlers v. Campbell*, 159 Neb. 328, 66 N.W.2d 585, 588 (1954).

GSB admits that it recovered attorney fees, costs and interest without obtaining a judgment. The court finds as a matter of law that Neb.Rev.Stat. § 25–1801 does not permit collection of amounts in excess of the debt without first obtaining a judgment. GSB's practice of routinely collecting these amounts in reliance on the statutory grant contained in Neb.

Rev.Stat. § 25–1801 is a violation of the FDCPA. GSB has shown, however, that there may be a genuine issue of material fact with respect to whether "a recognized and accepted uniform course of procedure allows recovery of an attorney fee" in these collection cases.[2]

GSB's argument that it is entitled to collect interest by virtue of Neb.Rev.Stat. § 45–104 is without merit. GSB sought recovery in county court under the jurisdiction provided by Neb.Rev.Stat. § 25–1801 and sought fees pursuant to that statute. Moreover, there has been no showing that the claims (debts) at issue were liquidated. To collect prejudgment interest, a claimant must comply with the provisions of either Neb.Rev.Stat. § 45–103.02(2) (for liquidated claims) or Neb. Rev. Stat § 45–103.02(1) (for unliquidated claims). GSB's reliance on the U.C.C. to support its collection of fees is similarly lacking in merit. As the court noted in its earlier order, the fact that incidental damages may be awarded under Nebraska law does not mean that they can be awarded absent a judgment. *See* Filing No. 37 at 6. Moreover, GSB has provided authority for the proposition that attorney fees are an incidental expense in a commercial context.

GSB argues that the key legal question is whether Neb.Rev.Stat. § 25–1801 permitted it to accept payment for the additional amounts when they were tendered by plaintiffs as part of the settlement of the county court collection actions. The court disagrees. Admittedly, parties are free to settle lawsuits and the law favors and encourages settlements. *Simmons v. Murray*, 189 Neb. 695, 204 N.W.2d 800 (1973) (*overruled on other grounds by Omaha Nat'l Bank v. Mullenax*, 211 Neb. 830, 320 N.W.2d 755 (1982)).

**2.** To the extent that GSB can collect attorney fees, the court finds that employment of in-house, as opposed to retained, counsel would not affect the allowance of a fee. *See Dale Electronics, Inc. v. Federal Ins. Co.*, 205 Neb. 115, 286 N.W.2d 437, 443 (1979).

Settlements will be enforced unless they are the product of fraud, error, or mistake. *Id.* Moreover, "a settlement agreement is subject to the general principles of contract law." *Heese Produce Co. v. Lueders,* 233 Neb. 12, 443 N.W.2d 278, 282 (1989). A settlement is a negotiated agreement ending a dispute. *See* Black's Law Dictionary 1377 (7th ed.1999). GSB's argument, instead of showing that its collection of fees is permitted, invites analysis similar to that involved in the resolution of the ultimate issue in this case; whether the settlement agreements are unfair and unconscionable as contracts of adhesion. *See, e.g., Duffy v. Landberg,* 215 F.3d 871, 873–75 (8th Cir.2000) (finding a misleading misrepresentation of Minnesota law in similar collection of costs, attorney fees and penalties). The court finds genuine issues of material fact preclude summary judgment on plaintiffs' FDCPA claim.

### Nebraska Consumer Protection Act

Plaintiffs contend that the undisputed facts show that they are similarly entitled to summary judgment in their favor on their NCPA claim. For the same reasons set forth above, the court finds genuine issues of material fact preclude summary judgment. The court cannot find that plaintiffs have shown that they are entitled to summary judgment on the state law claim.

GSB contends that plaintiffs cannot maintain an action under the NCPA for the reasons that 1) plaintiffs' claims do not fall within the purview of the NCPA, which covers only antitrust and restraint of trade cases, and 2) plaintiffs' action is expressly exempted from coverage under the NCPA. This is a question of law for resolution by the court. *Nelson v. Lusterstone Surfacing Co.,* 258 Neb. 678, 605 N.W.2d 136, 141 (2000) (referring to statutory interpretation).

The NCPA provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce shall be unlawful." Neb.Rev.Stat. § 59–1602. The terms "trade" and "commerce" are defined as "the sale of assets or services and any commerce directly or indirectly affecting the people of the State of Nebraska." Neb.Rev.Stat. § 59–1601(2). A person injured in violation of the NCPA may maintain a private right of action to enjoin further violations and to recover his actual damages. Neb.Rev.Stat. § 59–1609; *Nelson,* 605 N.W.2d at 141. However, to be actionable under the NCPA, the unfair or deceptive act or practice must have an impact on the public interest. *Id.,* 605 N.W.2d at 141. The court finds this is such a case. It has been certified as a class action, and the allegedly wrongful acts are not limited to a private transaction and have widespread effects. The court also rejects GSB's contention that the NCPA covers only monopolies and price-fixing. Although the NCPA was enacted as an antitrust measure to protect Nebraska consumers from monopolies and price-fixing conspiracies, it does not follow that its reach is confined to those specific cases.

The Consumer Protection Act expressly exempts certain activities of heavily regulated businesses. Neb.Rev. Stat. § 59–1617(1) ("the Consumer Protection Act shall not apply to actions or transactions otherwise permitted, prohibited, or regulated under laws administered by the Director of insurance, the Public Service Commission, the Federal Energy Regulatory Commission, or any other regulatory body or officer acting under statutory authority of this state or the United States"). Collection agencies are regulated under the Collection Agency Act, Neb.Rev.Stat. § 45–601 *et seq.* The Collection Agency

Act is regulatory in nature and obviously intended for the correction of abuses and the protection of the public. *State ex rel. Hartman v. Weiss,* 150 N.W.2d 264, 181 Neb. 685, 688 (Neb.1967). However, particular conduct is not immunized from the operation of the Consumer Protection Act merely because the actor comes within the jurisdiction of some regulatory body, the immunity arises if the conduct itself is also regulated. *Wrede v. Bank of Gibbon,* 247 Neb. 907, 531 N.W.2d 523, 529 (1995). *See also Hydroflo Corp. v. First Nat'l Bank,* 217 Neb. 20, 349 N.W.2d 615, 622 (1984) (noting the Department of Banking and Finance had general supervision and control over the bank as well as a duty to aid banks in maintaining proper banking standards and efficiency); *McCaul v. American Savings Co.,* 213 Neb. 841, 331 N.W.2d 795 (1983) (the Consumer Protection Act did not apply where loans in question had been reported to and indirectly approved by the regulator); *Kuntzelman v. Avco Financial Services of Nebraska, Inc.,* 206 Neb. 130, 291 N.W.2d 705 (1980) (noting that not only was the licensee regulated by the state under statutory authority, but the very act of making a loan was regulated). Although GSB is subject to the licensing provisions of the Collection Agency Act, there has been no showing that the alleged acts of GSB are subject to regulation by the Collection Agency Board so as to exempt those acts from the NCPA. Accordingly, GSB has not shown that it is entitled to judgment as a matter of law on its state law claim. GSB's motion for summary judgment on the NCPA claim must be denied.

■ Further, while the act permits the recovery of an attorney fee, restoration of the purchase price, and the imposition of civil penalties, its principal thrust is to prevent unfair or deceptive acts or practices in trade or commerce. *State ex rel. Douglas v. Schroeder,* 222 Neb. 473, 384 N.W.2d 626, 629 (1986). Consequently, the act is equitable in nature, in the sense that it seeks to prevent prejudicial conduct rather than merely compensate such damage as may flow therefrom. *Id.* Accordingly, plaintiffs are not entitled to a jury trial on their state law claim and that matter will be tried to the court.

Accordingly, IT IS ORDERED:

1. Plaintiffs' motion for summary judgment on their FDCPA claim is granted in part; the court finds as a matter of law that Neb.Rev.Stat. § 25–1801 does not authorize collection of attorney fees in a debt collection action without entry of judgment. Plaintiffs' motion for summary judgment is denied in all other respects.

2. Defendant's motion for summary judgment is denied.

3. Plaintiffs are not entitled to a jury trial on their NCPA claim.