230 N.J. Super. 616 (1989)
554 A.2d 878
NEW JERSEY SPORTS AND EXPOSITION AUTHORITY, A PUBLIC BODY, CORPORATE AND POLITIC, SUCCESSOR TO MONMOUTH PARK JOCKEY CLUB, A NEW JERSEY CORPORATION, PLAINTIFF-RESPONDENT, CROSS-APPELLANT,
v.
DANIEL J. DEL TUFO AND CAROL DEL TUFO, DEFENDANTS-APPELLANTS, CROSS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued January 31, 1989.
Decided February 22, 1989.
*619 Before Judges PRESSLER, O'BRIEN and STERN.
Louis B. Youmans argued the cause for appellants, cross-respondents.
Nicholas W. McClear argued the cause for respondent, cross-appellant (Wilentz, Goldman & Spitzer, attorneys; Kathleen Cavanaugh and Nicholas W. McClear, on the brief).
PER CURIAM.
Plaintiff New Jersey Sports and Exposition Authority, a public body, is the successor by merger to a former privately held, publicly traded corporation, Monmouth Park Jockey Club *620 (Monmouth Park), which owned and operated a race track in Oceanport, New Jersey. It brought this action pursuant to N.J.S.A. 14A:11-1 et seq. for an evaluation of the fair value of the shares of the two dissenting stockholders, defendant Daniel J. Del Tufo, the owner of 3,620 of the approximately 776,000 issued and outstanding shares of Monmouth Park, and defendant Carol Del Tufo, the owner of 300 shares. Following trial the fair value was fixed at $58 per share. Defendants appeal from the judgment so decreeing on both substantive and procedural grounds. They also appeal from a pretrial order striking their demand for a jury trial and from the provisions of the judgment awarding a $25,000 fee to the independent appraiser appointed pursuant to N.J.S.A. 14A:11-8(c) and ordering them to pay half of it. Finally, they appeal from the denial of their motion for a new trial. Plaintiff cross-appeals from the provisions of the judgment awarding defendants prejudgment interest and requiring it to share in the payment of the independent appraiser's fee.
The litigation background is recited in the trial judge's opinion, reported at 210 N.J. Super. 664 (Law Div. 1986), which explains his reasons for striking defendants' demand for a jury. We affirm the ensuing order substantially for the reasons therein stated.
Following that order and the later denial of defendants' motion for partial summary judgment, the trial judge appointed Martin J. Whitman, a chartered financial analyst, to determine the fair value of Monmouth Park's stock as of the statutorily mandated date of September 11, 1985. See N.J.S.A. 14A:11-3(3). His appraisal report, assigning a value of $58 per share, was filed in April 1987. Trial commenced in that month with the taking of Mr. Whitman's testimony, which consumed the first day. The second day of trial started with the marking of exhibits. During this process, an agreement was offered which had been entered into by plaintiff with one of the Monmouth Park stockholders, who, as it turned out, was a neighbor and close friend of the trial judge. The trial judge explained this *621 circumstance to counsel, advising them of his consequent decision to recuse himself. By agreement of the parties, however, and with the judge's concurrence, the document-marking was then completed and the matter assigned to another judge for trial.
Proceedings recommenced two months later before a second judge, the parties advising him at the outset of their agreement that Mr. Whitman would not be again produced and, in lieu thereof, the transcript of his April testimony would be introduced. Trial then continued with the testimony of the two witnesses proffered by defendant, their financial expert who valued the shares at $103.41 and one of plaintiff's Commissioners who had apparently been reported by the press as opining that the value of the land owned by Monmouth Park exceeded the price paid by plaintiff for the Monmouth Park stock. He testified, however, that he had never seen a land appraisal, was not himself in the real estate business, and had said, or meant to say, that "it was a good deal for the State of New Jersey to purchase Monmouth Park."
In August 1987 the trial judge rendered his oral opinion. In a careful review of the evidence and based on his fact-finding supported thereby, he accepted the appraisal methodology and price evaluation offered by Mr. Whitman and concluded that plaintiff had met its burden of demonstrating the fairness of the merger price. We are satisfied that the trial judge's findings and conclusions were adequately supported by the weight of the credible evidence and accorded with applicable legal principles. We therefore defer to them. See Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 483-484 (1974). And see R. 2:11-3(e)(1)(A). We consequently affirm that portion of the judgment fixing the value of the shares at $58 substantially for the reasons stated by the trial judge.
In so doing, we reject defendants' contention that
the record of the proceedings below is so riddled with misleading or totally uncomprehending testimony at crucial points, and with such a conspicuous absence of any information at all or an almost equally conspicuous presence of total misinformation on numerous critical points, as to make trial court's *622 determinations and its denial of defendants' application for a new trial a miscarriage of justice.
As we view the record, it fails to support these charges either in the generality or specifically. R. 2:11-3(e)(1)(E).[1] We also reject defendants' present objection to the use before the second trial judge of the transcript of Mr. Whitman's testimony before the first trial judge. We find nothing objectionable in the procedure following the first judge's recusal. Counsel were patently free, despite the recusal, to stipulate to the use of the transcript of the prior testimony in lieu of reproducing the witness. Compare Evid.R. 63(3). Moreover, our own review of the content of the testimony does not suggest any likelihood of its taint by reason of its having been taken before the subsequently recused judge.
With respect to the allowance of the appraiser's fee and the order requiring payment to be shared, we are first satisfied that its equal allocation between the parties constituted a reasonable exercise of the court's discretion in the matter expressly accorded by N.J.S.A. 14A:11-10. We are, however, *623 troubled by the amount of the fee awarded since there is no indication at all in this record of what it was based on. There is no reference to a detailed or time-itemized statement from Mr. Whitman, no reference even to the form in which he requested his fee, and no indication of any basis for a judicial determination of its reasonableness. Compare R. 4:53-4(a). And see In re Trylon Radio Laboratories, Inc., 76 N.J. Super. 264 (Cty.Ct. 1962). We consequently remand to the trial court for a reconsideration of the fee based on an appropriate submission from Mr. Whitman and an opportunity of defendants to be heard thereon.
The final issue before us is plaintiff's cross-appeal from the allowance of prejudgment interest to defendants. N.J.S.A. 14A:11-9 provides for the routine allowance of interest on the value of the dissenter's shares from the date of his demand for payment unless the court finds that his refusal to accept the corporation's offer of payment was "arbitrary, vexatious, or otherwise not in good faith...." The trial judge here found that defendants had not acted arbitrarily or in bad faith. Since that finding is supported by the record, we reject plaintiff's assertion that interest should not have been allowed.
We remand for reconsideration of the appraiser's fee. In all other respects the judgment appealed from is affirmed.
NOTES
[1] As we understand defendants' contentions, their primary argument is that because of the high value of the land owned by Monmouth Park, the asset value of the corporation exceeded its going-concern value and, hence, that their shares should have been appraised on the basis of a corporate liquidation. We are satisfied, however, that the contention, as a matter of fact, was not proved and, indeed, Mr. Whitman's report and testimony are persuasive of the contrary. Beyond that, we are also satisfied thereby that conceptually the going-concern value was the appropriate standard. See Heller v. Munsingwear, Inc., 33 Del. Ch. 593, 98 A.2d 774, 777 (Ch.Ct. 1953); Levin v. Midland-Rose Corporation, 41 Del. Ch. 276, 194 A.2d 50, 54 (Ch.Ct. 1963); Application of Delaware Racing Association, 42 Del. Ch. 406, 213 A.2d 203 (Del. Ch. 1965). We also reject defendants' contention of directorial impropriety in Monmouth Park's rejection of a $60 a share bid from a prospective private purchaser. The advantage of a sale to the State with all the assurances thereby vouchsafed clearly justified, as a matter of prudent business judgment, a sale at a price of $2.00 less per share. We are also constrained to note the ad hominem innuendoes asserted by defendants and intended to cast doubt on the good faith of the Monmouth Park directors. These are, however, purely speculative matters as to which no proof was adduced and to which, therefore, no court, trial or appellate, can accord the least regard.